Mr. Hendricks, we note you've accepted the appointment under the CJA and the court appreciates your doing so. You may proceed when you're ready. Thank you. It's my pleasure. If it pleases the court again, I'm Blake Hendricks. I represent the appellant Gary Sims in this case. Sims was charged with four others with possession with intent to distribute a conspiracy to possess intent with intent to distribute methamphetamine. Those four other individuals were named Capone, Martin, Logwood, and Holt. Sims and Logwood go to trial and are convicted of the conspiracy and Sims of a substantive count of distribution. We've raised four issues on appeal for the court, a fatal variance between the proof and the indictment, what we consider the erroneous admission of co-conspirator statements, inadequate polling of the jury following its verdict, and then procedural error at sentencing. Fatal variance argument. These facts I submit to the court are what are essential for the court's determination and of course we are looking at these facts in the light most favorable to the verdict. 2014, Capone and Martin are distributing large quantities of methamphetamine from the Jonesboro, Arkansas area to the greater St. Louis area. September 2015, Martin becomes a confidential informant. September 23rd, 2015, Martin then conducts a controlled purchase of from Capone with Sims as the source of supply. Martin is then later terminated as a confidential informant, but by early 2016, Martin is out of the methamphetamine business. He is just buying personal use amounts of opioid pills and methamphetamine. That same month, March 2016, Martin is re-recruited as a confidential informant and on March 31st, 2016, he makes a controlled buy of two pills from Capone. It was recorded during that recorded conversation. Martin described the conversation as a quick discussion between he and Capone with Capone catching Martin up on what had been going on and a reference is made by Capone that Gary has the plug. The following month, April 2016, Capone's phone is tapped. During the tap, there is a discussion that's discovered between Capone and Sims regarding Brian Holt. In that conversation, Sims says he, quote, does not mess with Holt and does not know him. At trial, Holt confirmed that through his testimony that he never met Sims. Continuing with the wiretap in April 2016, there's a tap between Capone who texts Holt and says, quote, Gary's got some. In context, the trial testimony from the case agent was this was either before or during the time that Capone was transitioning out of meth and into pills. Regardless, at that point, there is no associated transaction involving Sims as a source and that pretty well ends the trial record story of Sims. At that point, the trial record sort of takes a different tack in its narrative. Holt ends up turning to a Jeremy Logwood as Holt's source of supply for methamphetamine and correspondingly, there are two methamphetamine transactions between Holt and a confidential informant supplied by Logwood. Those transactions were localized to the Jonesboro, Arkansas area. Our analysis and our contention is that this trial evidence proved two conspiracies, therefore fatally varying from the indictment which charged one. On one hand, it's our contention there is a conspiracy between Sims, Capone, and Martin, and the other, a second conspiracy involving Holt and Logwood. Now, the factors that courts use to determine is there a single overarching conspiracy or two conspiracies are obviously first is basic fundamental conspiracy law. Was there a common purpose? Was there mutual dependence that all the alleged members depend on each other? We analyze the location of the distributions and the timing of In our brief, we rely principally on the case of United States v. Morales. A quick discussion of it in Morales, we had Tocca and Antone had agreed to deliver marijuana to Chicago. Five months later, Tocca and the two others, Morales and Duenas, agreed to deliver marijuana to St. Louis. They were charged in a single conspiracy, but this court found that that was in fact two conspiracies. The analysis was this. There were two commonalities in that case. You had the same drug, marijuana, and you had a common player, Tocca, but this court saw three important distinctions that made this two separate conspiracies. The locations of the deliveries were different, Chicago, St. Louis. Timing different, they were four months apart, and most importantly, there was no mutual dependence between these two groups. They did not depend on each other. Granted, they had a common purpose, let's put marijuana on the streets, but they weren't dependent on each other to achieve that goal. Counsel, is that different from this case, to cut to what I really want you to address, where Sims may have, according to the statements, Sims was the source of supply for both places. Here it's, is it Jonesboro and Little Rock? I mean, Jonesboro and St. Louis? St. Louis. Yes, proceed. Why isn't he the source of supply for all of them? And that's dependency, ultimate source, dependency, the parent of everything, the mother of everything. On the location element, this is the way I read the trial record, is Sims testifies, and you can find this around transcript page, I think about 280, not Sims, pardon me. What Martin says is, I've been dealing with Capone since 2014. We were dealing in large quantities of methamphetamine. We were distributing that to the greater St. Louis area. Elsewhere in that testimony, it gets muddled, and he says, but I've seen Gary Sims transact other methamphetamine business with Capone. He does not put a time frame on it, and he does say in some of his local, but there's no time frame on it. We don't know when those alleged transactions occurred, and the record is not clear, and Martin was not clear. And so I think that the gist of it, as we read that record, it is, again, two different locations, primarily large distributions to greater St. Louis, possibly, although we don't know a time frame and there are no specifics, some limited transactions in the Jonesboro area. And so going back, I see Morales as really the the, we have the same drug, methamphetamine. We do have the same common player, Capone, but other than the locations, we'd have a timing difference. The last act proved for Sims was the September 23, 2016, pardon me, 15 transaction. The Holt-Logwood transactions are not for another later. And what will ultimately be my argument to the court is there was no mutual dependence between these two groups of people. Holt and Logwood were not dependent on Sims. Sims, Capone, and Martin were not dependent on Holt and Logwood. And so one of the cases that the government cites, the McCauley case, is interesting with a comment. So McCauley was the guy that was distributing to one set of customers. He gets arrested. On his release, he starts dealing with a second set of customers. And he argued that's two different conspiracies. And this court disagreed because McCauley was the hub of a hub-and-spoke conspiracy. And therefore, he was a member of that conspiracy. He was simply the hub. McCauley is sort of like Capone in this case. We could analyze it that Capone is the hub and had two different spokes. Sims and Martin are a spoke. Holt and Logwood are a spoke. And we addressed the old Supreme Court case, Kodiakos. And Kodiakos was a hub-and-spoke conspiracy case. The Supreme Court used a great analogy in Kodiakos to the fence, is you have the thieves who are supplying the stolen goods to the fence, the fence then putting the stolen goods out in the marketplace. The Supreme Court found that that would have been conspiracies. While there was a common purpose to put stolen merchandise on the street, there was no mutual dependence. The spokes were not dependent on another spoke. They were dependent on the hub, but not the other spokes. And that's my reading of the record, having tried the case and the argument that I made ultimately in the Rule 29 was, we've got hub-and-spoke here, but the two spokes, while a common purpose to distribute methamphetamine, were not dependent upon each other. And so that's why I see Morales as being the most apt of the cases cited in the briefs. Of course, that only gets me halfway here. If I've been able to persuade the court that there were two separate conspiracies involved, I also have to show that Gary Sims was prejudiced by the introduction of the whole Logwood conspiracy, assuming that it's a separate conspiracy. Of the three types of prejudice, I'm relying on the spillover effect. There is no spillover effect if the defendant was involved in both conspiracies. So for the same reason I've just articulated why I think that there are two separate conspiracies, my suggestion to the court is there's no evidence that Sims was involved in Holt-Logwood conspiracy. He didn't assist Holt in Logwood, he never dealt with Holt, never didn't know Holt, didn't know Logwood, no evidence there. Mr. Hendricks, wasn't there evidence though that Holt coordinated with Capone to get supply from your client? And so it comes from the wiretaps in April of 2016, and the essence of those recordings were at first Capone talks to Sims about Holt, and that's when Sims says, I've never dealt with Holt, I don't know Holt. And then there's the second set of wiretaps from April 2016, essentially between Capone and Holt that reference a Gary. I think the actual comment was Gary's got some. And that sort of ended that story to me. What we know is no follow through. We didn't see any other outreach to Sims. Hey, do you have any? Can you get me some? There's evidence of Sims saying, receiving calls and going, no, I don't have any. Speculative as to what that meant. And again, I know we're dealing with a deferential standard of review, but there still has to be substantial evidence for a reasonable juror to have found guilt beyond a reasonable doubt. And my submission to you is, there's no follow through, there's no evidence to suggest that. It's speculation. When Sims is saying, I don't have any, he's either saying, literally, I don't have any, or it's because I don't deal with Holt and I refuse to be in a conspiracy with Holt. So that's our argument of Sims is simply not involved in the Holt-Logwood conspiracy and therefore prejudiced to him by the spillover effect of the Holt-Logwood conspiracy being introduced against him. And that's sort of the same set of facts cover your member of a Holt-Logwood conspiracy. The conversation that happened on March 31st, idle chatter, as I've argued in the brief, also those conversations, because there was no conspiracy between Sims, Holt, and Logwood, they would not have been in the course of or in furtherance of a conspiracy. I have two remaining issues. I have just a few minutes left. I'm into my time. Unless there are further questions, I'll reserve the rest of my time. Very well. Thank you, Mr. Hendricks. The court will hear from Mr. Dickinson. Good afternoon. It's my pleasure to be here. May it please the court. My name is Bart Dickinson and I represent the United States in this case. The four issues before the court, the court's aware of, and we have briefed those issues in our brief, appellee's brief. As to the first issue, the United States does believe that the proof and evidence submitted to the jury at trial did not constitute a variance from the indictment. The proof was sufficient to prove that Sims was part of a single conspiracy. The standard review is a factual question reviewed for clear error by the district court that comes from United States versus Whirlwind Soldier. And I would point out from the U.S. first to ask you that the review is limited. If the record contains evidence, a jury could find that one overall agreement to commit an illegal act, the evidence of one conspiracy. In this case, the appellant moved for a judgment of acquittal. That was probably denied. The district court included a jury instruction regarding single versus multiple conspiracies and counsel argued that point at trial and the jury convicted Mr. Sims of the conspiracy and intentional intent to distribute. The evidence in this case did show and testimony showed that the appellant was the source of supply for Freddie Capone throughout the conspiracy from September of 2014 and attempts even all the way up until May of 2016 when Mr. Capone and Mr. Holt were attempting to obtain methamphetamine for the deliveries that were made ultimately by Mr. Logwood and Mr. Holt. And the primary area was Jonesboro. The argument about St. Louis, I don't think that's relevant because for Mr. Sims, it was always Jonesboro. He was a source of supply in Jonesboro to primarily the head of the drug trafficking organization, Freddie Capone. Any subsequent sales by Matthew Martin or distribution by Matthew Martin may or may not have been part of Mr. Sims' agreement to St. Louis or in the local area, but Matthew Martin testified that he did both. He did distribute some into St. Louis and southeast Missouri. He did distribute in Jonesboro and northeastern Arkansas as well, but those were decisions made by Freddie Capone and Matthew Martin. Mr. Sims' role was just a source of supply in the Jonesboro area. Also, Mr. Sims acknowledged and the evidence showed that there was a relationship and knowledge of both Matthew Martin, obviously from the September 23rd distribution where Mr. Martin made a recorded buy and distribution of received an ounce of methamphetamine from Mr. Sims directly. And then later on, we see in the wiretapped taped phone calls and text messages that Mr. Holt is attempting to obtain methamphetamine directly from Mr. Sims and is asking Freddie Capone about getting in touch with Mr. Sims. Mr. Sims refers to Brian Holt as Zero, his street name, and says, I don't know him. I don't want to deal with him. But I submit that's that street talk for I don't trust him. I'd rather deal with Capone. But nevertheless, there was evidence that Mr. Sims was still engaged and involved in the conspiracy in the Jonesboro area with Mr. Capone and at that time more with Mr. Holt than Mr. Martin. So, I do believe that evidence showed him to be the single source or a source of supply to Mr. Capone and his co-conspirators throughout the term of the conspiracy. In particular, as to the argument that there was a later a second conspiracy with Mr. Holt and Mr. Logwood, the evidence was clear and there were records introduced to show that there were attempts to methamphetamine and Mr. Logwood was later a source through Mr. Holt because Mr. Sims at that time could not deliver, I think the evidence in the record show, Gs and Zs, grams or ounces of methamphetamine through Mr. Capone. I do believe, in fact, that this was a single conspiracy. The jury also agreed with that. There are cases that are cited in the appellee's brief, U.S. versus SLAG, the McCauley case as well, and Hamilton and Binford that all talk about fact questions about different members of the conspiracy, the participants, over time, the location, if they know each other, identifying sources, those are all factors to by the question, what's the last date Sims really supplied in the government's view to this conspiracy? Well, there was testimony from many, many contacts from law enforcement as well as from Mr. Martin. The last evidence that he supplied, there were phone texts in the wiretap where Mr. Sims was advising Mr. Capone that be careful, look out, there's a canine unit coming by. So there was evidence that Mr. Capone and Mr. Sims were still meeting to engage in distribution in the wiretap in April of 2016. And I submit to you that there were many attempts to supply, but as for direct supplying that was on the record, Matthew Martin did testify that he received methamphetamine directly from Mr. Sims, and there were multiple occasions that he did, that Mr. Capone did. And I was asking for a date. So you think April 16? I think in April of 16, there is evidence that he was supplying methamphetamine to Freddie Capone through the conversations recorded in the wiretap between Mr. Capone and Mr. Sims. What's the best evidence that Sims had a common purpose with Logwood and Holt? How do you tie them together? I don't tie Mr. Sims to Jeremy Logwood. I don't believe that those two conspirators were aware of each other or aware of their involvement in the conspiracy. I do tie him to Brian Holt because Brian Holt mentioned multiple attempts to contact Gary Sims specifically. There was a phone conversation where Freddie Capone was going to be out of town and Brian Holt was asking, can I contact him? What's his number? And then there's later subsequent conversations between the appellant Sims and Capone where the appellant Sims is mad because... Are attempts without sales enough? I think it certainly shows that they're further in the conspiracy and they had the same common purpose to distribute in that area. Absolutely. Especially when there are other, there are subsequent conversations between other co-conspirators talking about continuing to use whatever source there is. And there was a Brian Holt and Freddie Capone discussions. If it's your source, we'll split the money. If it's my source, we'll split the money. That was part of the record as well. And I think it shows that those two individuals were looking to continually obtain methamphetamine from Gary Sims. Also... There's not such a thing as their counsel's attempt to conspire, right? That's correct, your honor. I mean, that's correct. As to counsel's argument that there's a variance in proof, and if so, would there be any prejudice? I don't believe there would be any to conspiracies. I do believe that the case in Barth, U.S. versus Barth, clearly shows that the variance would not be prejudicial spillover. In Barth, there was involvement, but just like Barth, Mr. Sims knew three of the four conspirators. He was the primary contact. Freddie Capone never changed. His role never changed in the area, and his role never changed in the Jonesboro area, and it was always methamphetamine with Mr. Capone. So, I don't believe that if there's a variance, that it was any prejudicial spillover from that variance. As to the appellate's second argument and the co-conspirator exception, both Freddie Capone and Brian Holt's statements were admitted. Both were, in fact, declarants who were, as according to the United States versus Arias, conspiracy did exist. They were declarants, and the defendant were all members of the conspiracy, and those statements were made in furtherance of the conspiracy. The standard review is abusive discretion, and I think that the Cesare's and U.S. versus Davis's cases certainly point out that in a case involving a conspiracy trial, there is a broader discretion to allow the statements into the case. The statements from Mr. Capone to Matthew Martin in March of 2016, it's certainly true. You can tell from the statement that Freddie Capone was in the conspiracy with Mr. Sims, was talking to Matthew Martin, who was a person who was in and out of conspiracy, but as far as Mr. Capone knew, he was furthering the conspiracy talking to Martin, who was a previous distributor of methamphetamine, telling him Gary's got the plug. Gary's a good source of quality, quantity, and supply of methamphetamine here in Jonesboro, as he has always been. So, I certainly believe that he was furthering the conspiracy by making those statements. Also, statements by Mr. Holt and Mr. Capone later in the wiretap that came into evidence again, talked about whether or not Gary had some in, whether Gary could supply G's and Z's, all of that, how they wanted to get in touch with Gary to be a supplier of methamphetamine. So, I do believe those statements are appropriate to be have been admitted by the district court. Appellant's third point goes to the inadequate or the refusal to poll juror number four, and of course, this is a case where we find not much in the Eighth Circuit. However, we do know from Amaya that there's no prescribed procedure that if courts request this, and it's appropriate that the district court should poll the jury, and that's exactly what happened in this case. None of the circumstances in the case is cited by the appellant. Those three cases, Amaya, was in the record in this case. The only thing we had in this case was a note, and in the midst of deliberations as to concerns about health and wanting to get off the jury, the district court adequately addressed that issue, did not excuse a juror, and when a verdict was returned, the jurors were polled, and without pause, hesitation, or any hint of concern or reservation, each juror affirmed the verdict as their verdict. Well, counsel, you slide right by that. I bet you anything the record doesn't really confirm what you just said. Well, your honor, in the record, it does show that each one was polled, and they say that that is their verdict. Yeah, but it doesn't show how they looked, how they acted, whether they did it quickly, whether four was standing up or sitting down, right? No, there's no record, right? Yes, your honor, that's correct. Okay, thank you. You were embellishing it here. Go ahead. Okay. I will say that the cases cited by the defense, there was one in the Netter case that the juror said, I think, did make a statement saying, well, I guess, or had some kind of comment after they affirmed the verdict, and so that was a little bit distinguished by what was in the record here. However, and that's the reason there's so much discretion, and there's no prescribed procedure in a situation like this, because it's hard to tell, and the record doesn't always show that, but I don't think there's, I think that the district court handled this appropriately and followed the same standard. What is suggested in government versus Virgin Islands versus Hercules, that's the exact standard in which this court, the district court used with the polling. The final argument of the appellant talks about the sentencing guideline range, which again, is a standard of review, abuse of discretion. I think the Plancarti-Vasquez case is on point to say that district courts can consider all transactions known or reasonably foreseeable to a defendant that were made in furtherance of this conspiracy. In this case, the appellant was finally, the amount of calculated methamphetamine was like 99 grams, and that was based on delivery by Matthew Martin, who testified that he, at the time he was involved, received his methamphetamine through Mr. Sims and Freddie Capone. As a matter of fact, in the trial, the defense counsel mentioned that he had distributed more than 43,000 grams, and he acknowledged that, but he also acknowledged on redirect that all of that methamphetamine was supplied by Gary Sims, and the calculation, I believe, was very generous and gracious to the appellant to only limit him to 99 grams of methamphetamine. I believe that the court very well could have made a higher determination as to how much the appellant was responsible for with his co-conspirators in the delivery of methamphetamine, but I would submit that I think that the decision was appropriate, the guideline range was appropriate, and the brief, for what I've said today here at this time, the United States requests that the court uphold and affirm the conviction and sentence of the appellant Gary Sims. Thank you, Mr. Dickinson. Mr. Hendricks. Thank you. Thank you. Just a few comments. Judge Benton, the last approved distribution act by Gary Sims was September 23rd, 2015. What happened after that were attempts to contact Sims to be a source of supply. It never materialized. There were no even attempts on Sims' part to supply methamphetamine after September 23rd, 2015. In furtherance of the March 31st, 2016 recorded phone call, again, I suggest you not in furtherance of the conspiracy, that was a pill transaction. By that time, the record is clear. Martin had testified. I was out of the methamphetamine business. I was simply buying personal use amounts of pills. Capone, the record shows, was transitioning, quote-unquote, out of the business at that time. Related but sentencing argument is simple. It's all but 25.9 grams of the remaining 99 that Sims was held responsible for from the pre-sentence report came from Capone Martin transactions in July, 2015. The current state of our guideline is that we analyze looking only at the scope of the defendant's agreement, not the entire scope of the conspiracy for what a defendant will be held responsible for. Question is, what was the scope of Sims' agreement? I suggested to the court there was no evidence to suggest he was a member of the conspiracy in July, 2015. Unless there are any further questions, that will conclude my presentation with thanks to the court. Hearing none, thank you, counsel, both counsel for your appearance today and your briefing. The case is submitted and we will decide it in due course. Thank you, your honors.